**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Villescaz, guardian of Francisco Javier Villescaz,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>City of Eloy, Pinal County, et al.,<br><br>　　　　Defendants. | No. CV-06-2686-PHX-FJM<br><br>**ORDER** |

The court has before it defendants City of Eloy, William K. Pitman, and David Villescaz's ("Eloy defendants") motion for summary judgment (doc. 66), plaintiff Frankie Villescaz's[1] response (doc. 76), and defendants' reply (doc. 79). We also have before us the Eloy defendants' motion to strike plaintiff's responses to requests for admissions (doc. 60), plaintiff's response (doc. 73), and defendants' reply (doc. 74), and the Eloy defendants' motion to preclude testimony of Dr. Esplin (doc. 61), plaintiff's response (doc. 72), and defendants' reply (doc. 75). For the reasons set forth below, we grant the Eloy defendants'

---

[1] Frankie Villescaz was adjudicated an incapacitated adult and his mother, Mary Villescaz, was appointed his guardian. The plaintiff in this action is Mary Villescaz; however, for ease of discussion, we will refer to the plaintiff as Frankie Villescaz.

motion for summary judgment (doc. 66), and deny the Eloy defendants' motions to strike (doc. 60), and to preclude testimony (doc. 61).

**I–Background**

On June 15, 2003, Frankie Villescaz, a mentally retarded, nineteen-year old, rode his bike to a convenience store to purchase a soda and chips. Outside the store, he met Orlando Mendivil, who told him that he planned to hit the clerk over the head with a hammer and rob the store. He asked Frankie to stand outside as a lookout. Mendivil proceeded to rob the store and murder the clerk. Eloy Police Sgt. David Villescaz[2] was called to the scene to investigate. Frankie was identified as a possible witness to the crime. After Frankie was found a few blocks away from the scene of the crime, he agreed to have a taped statement taken by Sgt. Villescaz at the City of Eloy Police Department. During the interview, Frankie provided the police with enough information to locate and apprehend Mendivil. Frankie told Sgt. Villescaz that he initially refused to act as a lookout, telling Mendivil that "he wouldn't go to jail for anybody," DSOF, ex. A at 15-16, but he subsequently agreed to act as the lookout. Id. at 15.

On June 19, 2003, Frankie agreed to give another interview. Before the interview, Sgt. Villescaz read Frankie his Miranda warnings and Frankie indicated that he understood his rights. DSOF ¶ 10. According to police notes, during the June 19th interview, Frankie admitted to acting as a lookout during the robbery. He was then arrested for first degree murder and robbery. DSOF, ex. C2.

Sgt. Villescaz provided testimony to three different grand juries based on the information that he received from Frankie. He also testified that he had no personal knowledge of Frankie's mental problems, but only that Frankie had a speech impediment. DSOF ¶ 14. The grand jury convened on February 19, 2004, heard detailed testimony

---

[2]Defendant Sgt. David Villescaz testified that he is plaintiff's distant cousin. PSOF, ex. D at 23.

- 2 -

1 regarding plaintiff's mental health, including his seizures and mental retardation. Id. at 27-
2 32.  Each grand jury indicted Frankie for first degree murder and armed robbery.  On June
3 23, 2003, the Pinal County Attorney's office charged Frankie with first degree murder and
4 other offenses.  At his initial appearance, a City of Eloy Justice Court judge ruled that there
5 was probable cause to believe that Frankie had committed the crimes.

6 On April 20, 2004, after ten months of incarceration while awaiting trial, Frankie was
7 adjudicated incompetent to stand trial and the charges against him were dismissed without
8 prejudice.  He then filed this action under 42 U.S.C. § 1983 and the Americans with
9 Disabilities Act, 42 U.S.C. § 12132, against Eloy Police Sgt. Villescaz, Eloy Police Chief
10 Pitman, and the City of Eloy, alleging that Sgt. Villescaz's use of leading and suggestive
11 interview techniques was improper given Frankie's mental incapacity, and that the improper
12 interrogation elicited inaccurate information, which was then used against him to obtain the
13 indictment.  He claims that the improper interrogation violated his rights under the Equal
14 Protection Clause, and the Fourth, Fifth and Fourteenth Amendments. He also asserts state
15 law claims of false arrest and false imprisonment.

## II–Motions to Strike

17 We first consider the Eloy defendants' motion to strike plaintiff's responses to
18 requests for admission (doc. 60) and motion to preclude testimony of Dr. Esplin (doc. 60).
19 Motions to strike under Rule 12(f), Fed. R. Civ. P., are limited to pleadings under Rule 7(a),
20 Fed. R. Civ. P., in contrast to motions and papers under Rule 7(b), Fed. R. Civ. P.  A party
21 must include his objections to evidence offered in support of or opposition to a motion for
22 summary judgment in his Response or Reply, not in a separate motion to strike.  LRCiv
23 7.2(m).  Therefore, both motions are summarily denied (docs. 60 & 61).

24 In his response to the motion to strike, plaintiff moves for withdrawal of admissions
25 pursuant to Rule 36(b), Fed. R. Civ. P.  The Eloy defendants propounded requests for
26 admissions and interrogatories on August 23, 2007.  Although plaintiff had 30 days to
27 respond to the request, Fed. R. Civ. P. 36(a)(3), he did not respond until March 18, 2008,
28 some 180 days late.  If a party fails to timely respond to a request for admission, the matter

1 is deemed admitted. Id. A matter admitted in response to a request for admission is
2 "conclusively established" unless the court, on motion, permits the admission to be
3 withdrawn or amended. Fed. R. Civ. P. 36(b). We may permit withdrawal of the admission
4 "if it would promote the presentation of the merits of the action" and if the withdrawal will
5 not prejudice the party who obtained the admission. Id.

6 Plaintiff has previously failed to timely prosecute this case. On March 7, 2008, we
7 entered an order imposing sanctions and precluding plaintiff from maintaining certain claims
8 against the Pinal County defendants for his failure to comply with our order compelling
9 discovery (doc. 50). Notwithstanding plaintiff's neglect in prosecuting his case, we are
10 inclined to allow withdrawal of the deemed admissions, not only because the admissions
11 effectively nullify plaintiff's entire case, but also because the Eloy defendants fail to explain
12 how they would be prejudiced by our withdrawal of the admissions. Therefore, in order to
13 promote a fair resolution of this case on its merits, we allow withdrawal of the admissions
14 pursuant to Rule 36(b), Fed. R. Civ. P.

## III–Section 1983 Claims

16 Government officials performing discretionary functions are "shielded from liability
17 for civil damages insofar as their conduct does not violate clearly established statutory or
18 constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald,
19 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). To determine whether an officer is entitled
20 to qualified immunity, we use a two-step analysis. First, we decide whether, "[t]aken in the
21 light most favorable to the party asserting the injury, . . . the facts alleged show the officer's
22 conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151,
23 2156 (2001). If the violation of a right is properly alleged, we will determine whether that
24 right was "clearly established" such that "it would be clear to a reasonable officer that his
25 conduct was unlawful in the situation he confronted." Id. at 202, 121 S. Ct. at 2156. If either
26 of these inquiries is answered in the negative, the officer is entitled to qualified immunity.
27 Id. at 201, 121 S. Ct. at 2156. Qualified immunity protects "all but the plainly incompetent
28 or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct.

- 4 -

1092, 1096 (1986). For purposes of determining whether Sgt. Villescaz is entitled to qualified immunity, we examine each claimed constitutional violation.

### A. Equal Protection

Plaintiff contends that Sgt. Villescaz violated his equal protection rights when he interrogated Frankie in an improper and untrustworthy manner. Response at 7. The Equal Protection Clause ensures that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985). Plaintiff alleges no facts showing that he was treated differently than others who are similarly situated. In fact he appears to claim that he should have been treated differently because of his mental disability. This claim is not cognizable under the Equal Protection Clause.

In addition, claims asserting violations of the Equal Protection Clause require proof of discriminatory intent or motive. See Navarro v. Block, 72 F.3d 712, 716 (9th Cir. 1995). There is a strong presumption that a state actor has properly discharged his official duties, and to overcome that presumption the plaintiff must present "clear evidence to the contrary." United States v. Armstrong, 517 U.S. 456, 465, 116 S. Ct. 1480, 1486 (1996). Other than producing evidence that Sgt. Villescaz should have known that plaintiff was mentally retarded, he has failed to produce any evidence of discriminatory intent. We conclude that plaintiff has not established an equal protection violation.

### B. Fourth Amendment

Although plaintiff's Fourth Amendment claim is unclear, he appears to assert that Sgt. Villescaz violated his rights when he improperly interrogated him, which then led to his arrest and ten-month incarceration. Response at 10. Although some reference is made to the police "withhold[ing] critical information from the prosecutor," id. at 11, there is no reference to any specific evidence that was withheld. This bare accusation is insufficient to overcome a motion for summary judgment. See Fed. R. Civ. P. 56(e)(2).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless arrest is reasonable where there is probable cause to believe

1   that a criminal offense has been committed. Devenpeck v. Alford, 543 U.S. 146, 152, 125
2   S. Ct. 588, 593 (2004). Probable cause exists if "at the moment the arrest was made . . . the
3   facts and circumstances within [the officer's] knowledge and of which [he] had reasonably
4   trustworthy information were sufficient to warrant a prudent man in believing that [the
5   suspect] had violated [the law]." Hunter v. Bryant, 502 U.S. 224, 228, 112 S. Ct. 534, 537
6   (1991). Law enforcement officials who "reasonably but mistakenly conclude that probable
7   cause is present are entitled to immunity." Id. at 227, 112 S. Ct. at 536 (quotation omitted).
8   A plaintiff is collaterally estopped from asserting § 1983 false arrest claim where probable
9   cause is established at a preliminary hearing. Haupt v. Dillard, 17 F.3d 285, 288 (9th Cir.
10  1994).

11      An Eloy Justice Court, three grand juries, and the county attorney's office each
12  determined that probable cause existed to support the arrest and prosecution. In addition,
13  Sgt. Villescaz reasonably believed that probable cause existed to effectuate the arrest.
14  Frankie was seen at the scene of the crime and later accurately recounted the details of the
15  crime. He also admitted that he stayed in front of the store while the murder was committed,
16  and that he told Mendivil that he would alert him if someone approached.

17      Because an officer could have reasonably believed, based on these facts and
18  circumstances, that probable cause existed to support the arrest, we conclude that plaintiff's
19  Fourth Amendment claim fails.

20                             **C. Fifth Amendment**

21      Plaintiff alleges that his Fifth Amendment right was violated when statements
22  obtained in the interrogation were used against him to obtain the formal indictment. The
23  Fifth Amendment provides that "[n]o person . . . shall be compelled *in any criminal case* to
24  be a *witness* against himself." U.S. Const. amend. V (emphasis added). "[T]he mere use of
25  compulsive questioning, without more," however, does not violate the Constitution. Chavez
26  v. Martinez, 538 U.S. 760, 767, 123 S. Ct. 1994, 2001 (2003). Instead, "the core protection
27  afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant
28  to testify against himself *at trial*." United States v. Patane, 542 U.S. 630, 637, 124 S. Ct.

1  2620, 2626 (2004) (emphasis added) (citing Chavez, 538 U.S. at 766-68, 123 S. Ct. at 2000-
2  02); see also United States v. Verdugo-Urquidez, 494 U.S. 259, 264, 110 S. Ct. 1056, 1060
3  (1990) and Withrow v. Williams, 507 U.S. 680, 692, 113 S. Ct. 1745, 1753 (1993)
4  (describing the Fifth Amendment as a "trial right").

5  Under Chavez, § 1983 plaintiffs do not have a Fifth Amendment claim against a law
6  enforcement official who elicited unlawful confessions if those confessions are not then
7  introduced against the plaintiff in a criminal proceeding. The Chavez Court has refused to
8  expand the definition of "criminal proceedings" to proceedings before a grand jury. The
9  Court emphasized, however, that its holding "do[es] not mean that police torture or other
10 abuse that results in a confession is constitutionally permissible so long as the statements are
11 not used at trial; it simply means that the Fourteenth Amendment's Due Process Clause,
12 rather that the Fifth Amendment's Self-Incrimination Clause, would govern the inquiry."
13 Chavez, 538 U.S. at 773, 123 S. Ct. at 2004. Because plaintiff's statements were not used
14 against him at trial, we conclude that plaintiff has failed to set forth a cognizable claim under
15 the Fifth Amendment.

### D. Fourteenth Amendment

17 Chavez left open the possibility that a § 1983 plaintiff could pursue a claim for
18 violation of substantive due process in the event of genuine physical or mental coercion
19 surrounding his confession. However, § 1983 liability will arise only from "the most
20 egregious official conduct." County of Sacramento v. Lewis, 523 U.S. 833, 846, 118 S. Ct.
21 1708, 1716 (1998). Only "[c]onvictions based on evidence obtained by methods that are 'so
22 brutal and so offensive to human dignity' that they 'shoc[k] the conscience' . . . violate the
23 Due Process Clause." Chavez, 538 U.S. at 774, 123 S. Ct. at 2005.

24 Plaintiff has failed to allege any facts that demonstrate that plaintiff's interrogation
25 rose to a level resulting in a constitutional deprivation. He contends that the Eloy defendants
26 failed to follow a "scientifically sound eyewitness interview protocol," that the interview
27 techniques were "highly leading and suggestive," and at times were "coercive and
28 admonishing." PSOF ¶¶ 7-9. He argues that interview questions requiring a yes or no

1 response, multiple choice questions, compound questions, and question repetitions can result 2 in inaccurate responses, particularly when used against an individual with a mental deficit. 3 He contends that Sgt. Villescaz's instructions to take his time and think were coercive. He 4 claims that his responses demonstrate confusion and acquiescence. Even if we assume that 5 Sgt. Villescaz was aware that Frankie had some mental impairment, and that the unmodified 6 questioning was leading and suggestive, we cannot agree that the questioning was so 7 "egregious" as to "shock the conscience" in violation of plaintiff's due process rights.

8 Moreover, officers are not liable under § 1983 where they act in good faith. "The Due 9 Process Clause is simply not implicated by a *negligent* act of an official causing unintended 10 loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328, 106 11 S. Ct. 662, 663 (1986) (emphasis in original). There is no evidence that Sgt. Villescaz 12 intended to violate plaintiff's rights, or was plainly incompetent in the manner tin which he 13 conducted the interview. Bernie Click, the Eloy defendants' police practices expert, attested 14 that "[t]he interrogation of Frankie Villescaz by Detective Villescaz was conducted in a 15 manner consistent with nationally recognized police policy and training standards and met 16 the standard of care." DSOF ¶ 18. There is no evidence that Sgt. Villescaz acted from an 17 unlawful motive. Therefore, plaintiff's due process claim fails as a matter of law.

18 Based on the foregoing, we conclude that plaintiff's has failed to allege a cognizable 19 constitutional violation, and accordingly, Sgt. Villescaz is entitled to qualified immunity.

20 **E.  Chief Pitman**

21 Supervisory officials are not liable for the actions of subordinates on any theory of 22 vicarious liability under § 1983. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 691-92, 98 23 S. Ct. 2018, 2036-37 (1978). A supervisor may be liable under § 1983 only "if [he] 24 participated in or directed the [constitutional] violations, or knew of the violations and failed 25 to act to prevent them." Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (citation 26 omitted).

27 We have already concluded that plaintiff has not raised a valid constitutional claim. 28 But even if he had, plaintiff raises no allegations that Chief Pitman participated in or directed

1  any alleged constitutional violations, or knew of the violations and failed to prevent them.
2  Finally, plaintiff fails to respond to defendants' argument that summary judgment must be
3  granted in Chief Pitman's favor. For all of these reasons, we grant summary judgment in
4  favor of Chief Pitman.

### F. City of Eloy

6  Plaintiff asserts that the City of Eloy violated his constitutional rights by failing to
7  adequately train its police officers in interrogation techniques for mentally deficient
8  individuals. A municipality may be held liable under § 1983 only when the execution of the
9  municipality's policy or custom causes the injury. City of Canton v. Harris, 489 U.S. 378,
10 385, 109 S. Ct. 1197, 1203 (1989). "The inadequacy of police training may serve as the basis
11 for § 1983 liability only where the failure to train amounts to deliberate indifference to the
12 rights of persons with whom the police come into contact." Id. at 388, 109 S. Ct. at 1204.
13 Not only is there no showing of deliberate indifference on the part of the City of Eloy,
14 but there is no basis for liability against the city where there is no basis for liability against
15 the police officer. City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573
16 (1986). Because we have concluded that plaintiff has failed to support a claim for violation
17 of his constitutional rights, we also grant summary judgment in favor of the City of Eloy.

### IV–Americans with Disabilities Act

19 Plaintiff next contends that the Eloy defendants deprived him of the "benefits of the
20 activities of an adequately administered and trained public entity, the Eloy Police
21 Department," by failing to train and supervise police officers in investigating and questioning
22 persons with developmental disabilities, exploiting his disabilities to obtain incriminating
23 statements, and withholding information of his disabilities from others. Complaint ¶ 41.
24 To establish a violation of Title II of the ADA, a plaintiff must show that (1) he is an
25 individual with a disability; (2) he was excluded from participation in or denied the benefits
26 of a public entity's services or activities, or was otherwise discriminated against by the public
27 entity; and (3) such exclusion or discrimination was by reason of his disability. Duvall v.
28 County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001). To recover monetary damages under

the ADA a plaintiff must prove intentional discrimination by the defendant. Id. at 1138. He must demonstrate that the defendant acted with "deliberate indifference," which requires both "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1138-39 (citing City of Canton, 489 U.S. at 389, 109 S. Ct. at 1205). "[A] failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." Id. at 1139.

In his response to the defendants' motion for summary judgment, plaintiff simply states that the "plaintiff's ADA claim, as alleged in the complaint, is valid." Response at 12. This is insufficient to withstand a motion for summary judgment, Fed. R. Civ. P. 56(e)(2), and we grant summary judgment on this basis alone. In addition, however, other than plaintiffs' bare allegations, there is no evidence whatsoever that the defendants deliberately acted or failed to act *because of* plaintiff's disability. There is no evidence that the Eloy defendants knew that the standard interrogation procedures were inadequate, and intentionally discriminated against plaintiff by deliberately failing to provide a modified interview. The motion for summary judgment on the ADA claim is granted.

## V–State Law Claims

Finally, the Eloy defendants contend that plaintiff's state law claims of false arrest and false imprisonment are barred because plaintiff failed to comply with the notice requirements of A.R.S. § 12-821.01(A). Under Arizona's notice of claim statute, a plaintiff with a claim against a public entity or employee must first file a notice of claim with the entity or person within 180 days after the cause of action accrues. Compliance with the notice provision is a "mandatory and essential prerequisite," Martineau v. Maricopa County, 207 Ariz. 332, 334, 86 P.3d 912, 914 (Ct. App. 2004), and plaintiff's failure to comply bars any claim, Falcon v. Maricopa County, 213 Ariz. 525, 527, 144 P.3d 1254, 1256 (2006).

Plaintiff admits that he did not file a notice of claim, but contends that because of his mental incompetency, the notice deadline is tolled until "one hundred eighty days after the disability ceases." A.R.S. § 12-821.01(D). While mental incompetency may toll the notice deadlines, it does not excuse the notice requirement. Plaintiff's guardian may file a notice

- 10 -

of claim on his behalf, but until the notice requirement is satisfied, plaintiff's state law claims are barred. Filing such a notice now would be futile because even if we had reached the merits of the state law claims, we would nonetheless find in defendants' favor. Under Arizona law, a police officer cannot be liable for false arrest or false imprisonment where the officer had probable cause to make the arrest. Hansen v. Garcia, Fletcher, Lund & McVean, 148 Ariz. 205, 207, 713 P.2d 1263, 1265 (Ct. App. 1986). Because Sgt. Villescaz had probable cause to arrest the plaintiff, as evidenced by the three grand jury indictments, plaintiff's false arrest and false imprisonment claims would fail.

## VI–Conclusion

**IT IS ORDERED GRANTING** the Eloy defendants' motion for summary judgment (doc. 66)**. IT IS FURTHER ORDERED DENYING** the Eloy defendants' motion to strike responses to requests for admission (doc. 60), and **DENYING** the Eloy defendants' motion to preclude testimony of Dr. Esplin (doc. 61).

DATED this 17th day of September, 2008.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge